**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
_____
In re:                          :
                                :
MICHAEL LOPEZ,                  :
                                :
            Chapter 7 Debtor    :
_____ :          OPINION
KENNETH KNIPPLE,                :          Civil Action No. 10-01187 (FLW)
                                :
                 Appellant.     :
      v.                        :
                                :
MICHAEL LOPEZ,                  :
                                :
                 Appellee.      :
_____ :
```

**WOLFSON, United States District Judge**:

Appellant Kenneth Knipple ("Creditor" or "Knipple") appeals a final Order of

the Bankruptcy Court dated January 25, 2010, granting Appellee Michael Lopez's

("Debtor" or "Lopez") motion to dismiss his voluntary Chapter 7 bankruptcy

petition pursuant to 11 U.S.C. §707(a); the Bankruptcy Court found that Debtor had

established cause for dismissal and that the prejudice to Creditor resulting from

dismissal was insufficient to overcome Debtor's showing of cause.  This Court has

appellate jurisdiction to review the decision of the Bankruptcy Court pursuant to 28

U.S.C. §158(a)(1).  For the reasons that follow, the Court affirms the decision of the

Bankruptcy Court.

## I. BACKGROUND & PROCEDURAL HISTORY[1]

Knipple lives at 2416 Dwight Avenue, Point Pleasant, New Jersey and also owns property located at 173 Pasadena Road, Manchester, New Jersey. Debtor and his wife reside at 2419 Dwight Avenue, Point Pleasant, New Jersey, which is across the street from Knipple. Prior to filing for bankruptcy, Debtor was in the construction business, trading under the name Bay Construction Corp[2]. Although it is not disputed that Knipple is a creditor of Debtor, the parties dispute the precise nature of the relationship.

Knipple alleges, that on or about May 18, 2007, he and Debtor entered into a contract for construction services on a home Knipple was constructing at 173 Pasadena Road and thereafter issued checks to Debtor in the amounts of $9,852 and $10,240 on May 18, 2007, and $5,840.67 on June 1, 2007. Knipple also asserts that Debtor hired a subcontractor, but directed him not to perform any work on Knipple's house. See Pl.'s Am. Compl. ¶¶18-19, February 19, 2009. Knipple claims this occurred from time to time until on or about June 18, 2007 when Knipple terminated the contract with Debtor and hired the subcontractor directly. Id. at ¶19. Knipple further alleges that Debtor failed to pay the subcontractor from the second week of the job through May 25, 2007 and that Debtor delayed progress on Knipple's home by failing to order construction materials with Knipple's deposit money, which money was paid to Debtor for that purpose. Id. at ¶21. Therefore,

---

[1]     The instant appeal relates to Debtor's petition for Chapter 7 bankruptcy, Case No. 07-23512 (KCF) and the subsequent adversary proceeding, Adv. Pro. No. 08-1216 (KCF). The Court here recounts only the facts relevant to the instant appeal.

[2]     Bay Construction Corp. also filed a Chapter 7 bankruptcy petition on September 20, 2008, Case No. 07-23517 (KCF).

Knipple claims that Debtor and his wife owe him a debt for obtaining money by false pretenses, false representations and/or actual fraud.  Id. at ¶22.[3]

Several months later, on September 20, 2007, Debtor filed for Chapter 7 bankruptcy protection.  Although Knipple was included as a creditor, he did not learn about Debtor's bankruptcy until December 2007, because Debtor used the unimproved property at 173 Pasadena Road as Knipple's address rather than his Point Pleasant address.  On December 18, 2007, Knipple filed a motion to extend the time to file a non-dischargability complaint, which motion was granted on February 15, 2008.  Thereafter, on March 5, 2008, Knipple filed an eight-count complaint.  On November 4, 2008, Knipple moved for summary judgment, which the Bankruptcy Court denied in its Order dated December 3, 2008.  Subsequently, Debtor moved for summary judgment, on January 16, 2009, and Knipple filed opposition and a cross-motion for summary judgment on February 9, 2009.  The Bankruptcy Court denied both motions in a pair of Orders issued on February 17, 2009.

Thereafter, a trial date was scheduled for March 31, 2009.  However, prior to the trial date, Debtor was arrested and indicted on two second-degree felony charges.  These charges arose out of Lopez's pre-filing conduct in relation to another

---

[3]     Knipple specifically alleges that Debtor and his wife (1) took money from Knipple without intending to complete his contract, (2) wrongfully diverted Knipple's money from his contract to other endeavors, (3) took Knipple's money knowing they would be unable to complete the contract, (4) took Knipple's money knowing that Debtor would be filing for bankruptcy, and that Debtor failed to comply with New Jersey regulations regarding consumer contracts for home improvements.

of his creditors.[4]  Based on his arrest, Debtor requested, through his attorney, that the trial be adjourned.  The bankruptcy judge postponed the trial for six months, and held a telephone conference on October 13, 2009, at which time the judge indicated that the bankruptcy trial would not be adjourned indefinitely pending resolution of the criminal matter.  A second conference was scheduled for December 14, 2009.  On or about December 10, 2009, Debtor filed a motion to dismiss his Chapter 7 petition based on his desire to avoid invoking the Fifth Amendment in the bankruptcy proceedings.  On January 11, 2010, the Bankruptcy Court held a hearing on the motion and reserved decision.  The Bankruptcy Court read its decision granting Debtor's motion into the record on January 25, 2010.

In its decision, the Bankruptcy Court stated that a Chapter 7 case may only be dismissed for cause under section 707(a), and the burden of establishing cause is on the moving party.  Bankruptcy Mot. Decision Tr. 2:20-22, Jan. 25, 2010.  Even if cause is established, the Bankruptcy Court noted that dismissal should not be granted if there is a "persuasive showing of prejudice to Creditors."  Id. at 2:24-3:2. After finding that Debtor established cause for dismissal -- "a wish to protect himself in his criminal trial by not testifying at his bankruptcy trial," (Id. at 3:3-5) -- the Bankruptcy Court proceeded to balance Debtor's showing of cause against potential prejudice to creditors and found that Knipple's allegations of harm did not overcome Debtor's showing of cause.  Accordingly, the Bankruptcy Court granted Debtor's motion to dismiss his Chapter 7 petition.

---

[4]     The Court was not provided with a copy of the indictment; however, Knipple's brief indicates the nature of the charges as stated above and Lopez does not dispute Knipple's statement.

Specifically, the Bankruptcy Court rejected Knipple's argument that relegation to state court remedies constitutes prejudice despite the automatic stay that had prevented him from collecting his debts for more than two years.  See Turpen, 244 B.R. at 435.  The Bankruptcy Court concluded that resorting to state court remedies would not unreasonably or prejudicially delay Knipple from colleting his debt, noting, "this matter is [not] close to resolution in the Bankruptcy Court."  Bankruptcy Mot. Decision Tr. 4:3-5.  The Bankruptcy Court also considered that Debtor's criminal charges were filed post-petition, and therefore constituted a significant change of circumstances since the filing.  Id. at 4:11-14.

The Bankruptcy Court further found Knipple's argument that prejudice would result from being behind other State Court judgments was "baseless" because "the complaint contains a 727 count."  Id. at 4:8-10.  Therefore, the Bankruptcy Court reasoned that even if Knipple "prevailed ... in the Bankruptcy Court, he would still be behind any prior State Court judgments."  Id.  The Bankruptcy Court also rejected Knipple's argument that he would be prejudiced because he incurred substantial costs pursuant to the bankruptcy litigation, finding "no reason why, when this case is dismissed, Mr. Knipple cannot use the discovery and trial preparation done in this court to bring a Cause of Action in the State Court."  Id. at 3:25-4:3.

Knipple filed notice of the instant appeal on March 5, 2010.

## III.  STANDARD OF REVIEW

When reviewing a bankruptcy court's decision, the standard of review is determined by the nature of the issues presented on appeal.  Baron & Budd, P.C. v.

Unsecured Asbestos Claimants Committee, 321 B.R. 147, 157 (D.N.J. 2005).   In particular, factual determinations reviewed on appeal should not be set aside unless found to be "clearly erroneous."   See Fed. R. Bankr. P. 8013; Chemetron Corp. v. Jones, 72 F.3d 341, 345 (3d Cir. 1995); In re Indian Palms Assocs., Ltd., 61 F.3d 197, 203 (3d Cir. 1995).   Review of facts under the "clearly erroneous" standard is significantly deferential and requires a "definite and firm conviction that a mistake has been committed." Concrete Pipe & Prods. v. Constr. Laborers Pension Trust, 508 U.S. 602, 622 (1993).   Conversely, legal conclusions from the bankruptcy court are subject to de novo or plenary review by the district court.   Donaldson v. Bernstein, 104 F.3d 547, 551 (3d Cir. 1997); Chemetron, 72 F.3d at 345.   Mixed findings of fact and conclusions of law must be broken down, and the applicable standards— "clearly erroneous" or de novo—must be appropriately applied to each component. Meridian Bank v. Alten, 958 F.2d 1226, 1229 (3d Cir. 1992) (citing In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989) and Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 102-03 (3d Cir. 1981)).   However, where the appeal "calls for reviewing the Bankruptcy Court's application of law to the facts of [the] case . . . whether the application of law to fact was proper, is reviewed as an ultimate fact and is subject to plenary review because it is, essentially, a conclusion of law." In re 15375 Memorial Corp. v. Bepco, L.P., 589 F.3d 605, 616 (3d Cir. 2009) (citation omitted).   In short, "[a]n abuse of discretion exists where the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." Id.

## IV. DISCUSSION

Knipple does not challenge the factual findings of the Bankruptcy Judge on the instant appeal, nor does he argue that the Bankruptcy Court applied an incorrect standard in reaching its conclusion.  Instead, Knipple challenges the Bankruptcy Court's conclusion that the prejudice to Knipple resulting from dismissal did not outweigh Debtor's established cause to voluntarily dismiss his bankruptcy petition. Additionally, Knipple argues on appeal that Debtor's motion should have been denied because Debtor acted in bad faith in moving to dismiss his bankruptcy petition.

Motions to dismiss a Chapter 7 bankruptcy petition are governed by section 707 of the Bankruptcy Code, 11 U.S.C. §707.  Section 707(a) provides,

> The court may dismiss a case under this chapter only after notice and a hearing and only for cause, including –
>> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>> (2) nonpayment of any fees [or] and charges required under chapter 123 of title 28; and
>> (3) failure of the debtor in a voluntary case to file, ... , the information required by paragraph (1) of section 521 [11 USCS § 521], but only on a motion by the United States trustee.

11 U.S.C. §707(a); Perlin v. Hitachi Capital Am. Corp. (In re Perlin), 497 F.3d 364, 369 (3d Cir. 2007); Smith v. Geltzer, 507 F.3d 64, 72 (2d Cir. 2007); In re Aupperle, 352 B.R. 43, 45-6 (Bankr. D.N.J. 2005).  "Although this provision does not specifically provide for a debtor's motion to dismiss a voluntarily–filed petition, courts have routinely held that section 707(a) applies to such cases."  Geltzer, 507 F.3d at 72; see also In re Turpen, 244 B.R. 431, 434 (B.A.P. 8th Cir. 2000); In re Jabarin, 395 B.R. 330, 337 (Bankr. E.D. Pa. 2008).  However, "[u]nder section 707(a), 'the debtor has no absolute right to dismissal of a Chapter 7 case.'"  Geltzer, 507 F.3d at 72 (quoting

Turpen, 244 B.R. at 434).  "Rather, a debtor seeking dismissal must show 'cause.'" Id. (citing 11 U.S.C. §707(a)); see also Aupperle, 352 B.R. at 45 ("Unlike a Chapter 13 debtor, a Chapter 7 debtor has no absolute right to voluntarily dismiss her Chapter 7 case.  To have her case dismissed by the court, the debtor must first establish 'cause'") (internal citations omitted); Jabarin, 395 B.R. at 337 ("To dismiss a chapter 7 case voluntarily, "the debtor has the burden of demonstrating sufficient cause.").

"[W]hether sufficient cause exists [to dismiss a debtor's Chapter 7 petition] is committed to the sound discretion of the bankruptcy court.  Jabarin, 395 B.R. at 337; Aupperle, 352 B.R. at 45 ("The *bankruptcy court has discretion to dismiss* a debtor's Chapter 7 for cause, after notice and a hearing.") (emphasis added); In re Marra, 179 B.R. 782, 785 (M.D. Pa. 1995) ("The decision whether to grant or deny a motion to dismiss a petition in bankruptcy lies within the discretion of the bankruptcy judge and will be reversed only for abuse of discretion.") (citing cases); see also Geltzer, 507 F.3d at 73 ("[T]he determination of whether cause exists is 'committed to the sound discretion of the bankruptcy court.'") (quoting In re Hull, 339 B.R. 304, 308 (Bankr. E.D.N.Y. 2006)); Turpen, 244 B.R. at 433.  Accordingly, this Court will only reverse the Bankruptcy Court's decision to dismiss Debtor's petition if it constitutes a clear abuse of discretion.  See Geltzer, 507 F.3d at 73.

**1. Establishment of Cause**

Although Knipple does not explicitly challenge the standard used by the Bankruptcy Court, this Court finds it necessary to address the propriety of the standard applied because many of the cases Knipple cites in support of his appeal

apply a standard different from that applied by the Bankruptcy Court and by other courts in this circuit.

### a. Whether the Bankruptcy Court Applied the Proper Standard to Determine Cause

"Cause" is not expressly defined in the Bankruptcy Code, and courts view the examples given in section 707(a) to be "illustrative, not exclusive." Geltzer, 507 F.3d at 72 (citing cases); accord Aupperle, 352 B.R. at 45 (citing cases). The Third Circuit has not articulated a definitive standard to determine whether a debtor has established cause to dismiss, and courts in other circuits have "formulated various standards for determining whether there are grounds for the voluntary dismissal of a chapter 7 case." Jabarin, 395 B.R. at 337.[5] However, the Jabarin court found that despite abstract differences, each line of cases essentially employed the same analysis -- "a factually intensive assessment of the debtor's reasons for requesting dismissal and of the impact dismissal can be expected to have on the creditors," noting that such an analysis could be labeled as a balancing test. Id. at 339. Indeed,

---

[5]   Indeed, the court in In re Cochener, 382 B.R. 311, 334 (S.D. Tex. 2007) rev'd on other grounds 297 Fed. Appx. 382 (5th Cir. 2008) (cited in Jabarin) surveyed the case law and suggests that three (3) different lines of cases under §707(a) have emerged. The first line of cases holds that "there can be no dismissal under §707(a) 'if there is any showing of prejudice to creditors." Jabarin, 395 B.R. at 337 (citing cases). The second line holds that "the test [for cause] turns on whether or not the dismissal is in the best interests of the debtor and the creditors of the estate ... with particular emphasis on whether the dismissal would be prejudicial to creditors." Id. at 337-338 (quoting In re Strunk, No. 0720758RF, 2008 Bankr. LEXIS 1411 (Bankr. E.D. Pa. May 9, 2008) (quoting Aupperle, 352 B.R. at 46)). The second test can be characterized as a balancing of the interests test. The third line of cases holds that dismissal should be granted freely unless it will cause "plain legal prejudice" to creditors. Id. at 338 (citing In re Hall, 15 B.R. 913, 917 (B.A.P. 9th Cir. 1981)). Plain legal prejudice has been described as "prejudice that is significant and real, not potential, when viewed in terms of the rights that debtors and creditors have after dismissal." Id. (citing Cochner, 382 B.R. at 334 (collecting cases)).

the Jabarin court adopted an interest balancing approach because, "it affords bankruptcy courts the flexibility needed to make the equitable determination whether there is 'cause' for a voluntary dismissal under §707(a)." Id. Other courts have also adopted a similar balancing of the interests test to determine whether cause for dismissal exists. See Aupperle, 352 B.R. at 46 ("In its simplest terms, the test [for cause] turns on whether or not the dismissal is in the best interests of the debtor and the creditors of the estate, with particular emphasis on whether the dismissal would be prejudicial to creditors.") (citations omitted); Strunk, 2008 Bankr. LEXIS 1411 at *4 n. 4 (adopting formulation of test as stated in Aupperele, supra); Mara, 179 B.R. at 785 ("[In determining whether cause exists,] the Bankruptcy Court must balance the equities and consider the benefits and prejudice of dismissal."); see also Geltzer, 507 F.3d at 72 ("[C]ourts in [the Second] Circuit have determined whether cause exists by looking at 'whether dismissal would be in the best interest of all parties in interest.'") (quoting In re Dinova, 212 B.R. 437, 442 (B.A.P. 2d Cir. 1997)); United States v. McDaniel (In re McDaniel), 363 B.R. 239, 245 (M.D. Fla. 2007) ("The Bankruptcy Court must still undertake a fact-sensitive inquiry that is guided by equitable considerations, which balances the benefit and harm to creditor and debtor alike."); but see In re Geller, 74 B.R. 685, 689 (Bankr. E.D. Pa. 1987) (voluntary request for dismissal should be granted in all but extraordinary situations).

The Bankruptcy Court below applied a "balancing of hardships analysis" to determine whether Debtor established cause for dismissal.  This Court agrees that balancing the "debtor's reasons for requesting dismissal and [] the impact of

dismissal can be expected to have on the creditors" is the appropriate standard for determining whether cause exists for voluntary dismissal under §707(a).  Jabarin, 395 B.R. 339.  Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion by applying an incorrect legal principle.

### b. Whether the Bankruptcy Court Abused its Discretion in Determining Debtor Established Cause for Dismissal

Some of the factors generally considered by courts in determining whether to grant a debtor's motion to dismiss, include:

(1) whether all the creditors have consented;
(2) whether the debtor is acting in good faith;
(3) whether dismissal would result in a  prejudicial delay in payment;
(4) whether dismissal would result in a reordering of priorities;
(5) whether there is another proceeding through which the payment of claims can be handled; and
(6) whether an objection to discharge, an objection to exemptions or a preference claim is pending.

Aupperle, 352 B.R. at 56 (citing Turpen, 244 B.R. at 434); accord Jabarin, 395 B.R. at 338 (citing cases).  It bears repeating that these factors, as with the examples in the statute, are merely illustrative and non-exclusive, "therefore, other grounds constituting 'cause' may justify dismissal."  Turpen, 244 B.R. 434 (citing Leach v. United States (In re Leach), 130 B.R. 855, 857 n. 5) (B.A.P. 9th Cir. 1991) and In re Watkins, 229 B.R. 907, 908 (Bankr. N.D. Ill. 1999)).

In the instant case, the Bankruptcy Court found that Debtor met his burden of establishing cause to dismiss his bankruptcy petition.  Specifically, the Bankruptcy Court found that Debtor's desire to protect himself in his pending criminal trial by not testifying at his bankruptcy trial outweighed any prejudice to Knipple resulting

from the dismissal.  As noted, this finding is reviewed only for abuse of discretion. Jabarin, 395 B.R. at 337.

Like the Bankruptcy Court, this Court has not found any cases specifically addressing whether a debtor's desire to protect himself in a pending criminal trial by not testifying at a bankruptcy trial establishes sufficient cause to dismiss a bankruptcy petition.  However, other courts have found a debtor's invocation of his Fifth Amendment privilege sufficient to establish cause to dismiss a bankruptcy petition where the withheld information would prevent the bankruptcy trustee from performing his duties.  See In re Moses, 792 F. Supp. 529 (E.D. Mich. 1992) (reversing bankruptcy court's denial of creditor's motion to dismiss and remanding for factual determination whether the withheld information prevented the trustee from performing his duties); see also In re Peklo, 201 B.R. 331 (Bankr. D. Conn. 1996) (granting trustee's motion to dismiss debtor's Chapter 7 case without prejudice, holding that the debtor's refusal to answer impaired the trustee's ability to administer the estate thereby constituting cause under 11 U.S.C. 707(a)); see also In re Fekos, 148 B.R. 10 (Bankr. W.D. Pa. 1992) (denying creditor-bank's motion to dismiss debtors' voluntary Chapter 7 petition where the bank did not specify the questions the debtor refused to answer or explain how such refusal prevented the bankruptcy estates from being administered).[6]

Here, Knipple does not appear to argue that Debtor's desire to avoid testifying at his bankruptcy hearing is insufficient cause to justify dismissal.  The

---

[6]   Although the cases cited specifically concerned motions to dismiss brought by creditors or trustees, the Court finds that the same rationale for finding cause where a debtor invokes his Fifth Amendment privilege should apply to a debtor's motion to dismiss for cause as well.

aforementioned cases demonstrate the intertwined nature of a debtor's bankruptcy and criminal proceedings.  In this case, the Court agrees with the Bankruptcy Court's conclusion that Lopez's pleading of the Fifth would interfere with the court's ability to resolve the lingering factual disputes in the proceeding, as well as prejudice Lopez's bankruptcy defense.  Therefore, the Court concludes that Bankruptcy Court's conclusion does not amount to a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact.  In re 15375 Memorial Corp., 589 F.3d at 616; Scaffidi v. DeSoto, No. 06-cv-03786, 2007 U.S. Dist. LEXIS 54112, at *5 (D.N.J. July 25, 2007).  Accordingly, the Court will not disturb the Bankruptcy Court's finding that Debtor has established sufficient cause for dismissal under §707(a).

### c.  Bad Faith

Knipple additionally asserts that dismissal of the bankruptcy petition is unwarranted because Debtor has acted in bad faith.  Knipple argues that Debtor should not be allowed to use the criminal charges against him "to shield [Debtor] from Knipple's complaint" because the criminal charges arise from Debtor's own conduct.  Appellant's Br. at pg. 7.  Knipple further claims "there is substantial evidence that debtor was fraudulently planning his bankruptcy for months," (Id.) and has acted in bad faith during the course of his bankruptcy by failing to account honestly for his assets.[7]  Knipple contends this bad faith precludes granting Debtor's

---

[7]     Specifically, Knipple asserts that "Debtor manipulated the bankruptcy court justice system in his petition and in the adversarial case in numerous ways including, but not limited to: (a) filing a false statement of financial affairs in his chapter 7; (b) obtaining money from a pre-filing creditor post filing and failing to

motion to dismiss, therefore the Bankruptcy Court's order should be reversed. Although styled as a separate argument, Knipple's bad faith argument essentially challenges the Bankruptcy Court's determination that Debtor has "cause" to justify dismissal. Indeed, whether a debtor has acted in good faith is one factor considered by a bankruptcy court in determining whether the debtor has cause for dismissal. See Discussion, supra, sec. 1b; Aupperle, 352 B.R. at 56 (citing Turpen, 244 B.R. at 434);

Where the debtor is the party moving to dismiss a bankruptcy petition, courts have held "only a debtor who has acted in good faith is permitted to voluntarily dismiss a chapter 7 case." Jabarin, 395 B.R. at 340. The court in Jabarin, explained that "[l]imiting voluntary dismissal to debtors who are acting in good faith simply may be an example of the general principle that courts do not reward anyone who is trying to manipulate the court system." Id.

The Third Circuit instructs courts to "assess a debtor's good faith on an 'ad hoc basis,'" considering "all of the facts and circumstances surrounding the debtor's filing for bankruptcy" including the 'honest intention' of the debtor and 'whether the debtor has abused the provisions, purpose, or spirit of bankruptcy law." Perlin, 497 F.3d at 372 (citing Tamecki v. Frank (In re Tamecki), 229 F.3d 205, 207 (3d Cir. 2000) and In re Integrated Telecom Express, Inc., 384 F.3d 108, 118 (3d Cir. 2004)). The court "emphasized that the good-faith determination rests within the sound discretion of the bankruptcy court," however, this discretion is not unlimited and "a

---

report it; [and] (c) never complying with the November 7, 2008 order." Appellant's Br. at p. 11 (citations omitted)

finding of lack of good faith 'should not [be] lightly infer[red].'"  Id. (citing Tamecki, 229 F.3d at 207-08).

As noted, Knipple first argues that Debtor should not be allowed to dismiss his petition because his criminal charges arise from his own conduct.  However, Knipple does not cite any authority supporting this proposition nor explain how this constitutes bad faith.  Indeed, the Court questions whether a criminal complaint could constitute bad faith in the dismissal context because the "bad faith" case law centers on the "facts and circumstances surrounding the debtor's *filing*."  Perlin, 497 F.3d at 373 (emphasis added).  Here, the criminal complaint against Lopez arose out of pre-filing conduct in allegedly defrauding another creditor and that creditor did not bring charges until months after the bankruptcy petition was filed.

Knipple next asserts Debtor acted in bad faith because he "was fraudulently planning his bankruptcy for months" prior to actually filing for bankruptcy.  In support of this argument, Knipple repeats several allegations concerning Debtor's activities prior to filing for bankruptcy.  While a bankruptcy court may consider a debtor's pre-filing conduct in determining whether a debtor filed for bankruptcy in good faith, ultimately "the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court."  In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996) (quoting In re Love, 957 F.2d 1350, 1355 (7th Cir. 1992)).[8]  Indeed, the Third Circuit holds that "the good faith of [bankruptcy] filings must be assessed on a case-by-case basis in light of the totality of the circumstances."  Id.  Here, Knipple's

---

[8]     Although Lilley addressed good faith in the context of a Chapter 13 bankruptcy filing, "Chapter 7 cases are subject to the same requirement of good faith as Chapter 13 cases."  In re Myers, 491 F.3d 120, 126 (3d Cir. 2007) (citing Tamecki, 229 F.3d at 207)

argument relating to Debtor's pre-filing conduct was before the Bankruptcy Court, when it granted Debtor's motion to dismiss his petition.  The court properly focused its good faith inquiry on Debtor's post-petition criminal charges and the attendant Fifth Amendment issues, recognizing the significant change of circumstances since Debtor initially filed for bankruptcy.

As further evidence of bad faith, Knipple asserts Debtor: (1) "never supplied his personal or corporate income tax returns," (2) "had sufficient income to pay his creditors from January 1, 2005 to 2208 [sic]," (3) "understat[ed] income in 2006 and 2006 [sic]," (4) had made no life style adjustments since filing for bankruptcy, and (5) has "manipulated the bankruptcy court justice system in … numerous ways."[9]  See Appellant's Br. at pp. 9-12.  However, these arguments were not made before the Bankruptcy Court below, therefore the Court will not consider them in determining whether the Bankruptcy Court abused its discretion in dismissing Debtor's petition.  See In re Kaiser Group Int'l Inc., 399 F.3d 558, 565 (3d Cir. 2005) ("[W]hen a party fails to raise an issue in the bankruptcy court, the issue is waived and may not be considered by the district court on appeal.").

In sum, Knipple has not shown that the Bankruptcy Court abused is discretion in concluding that Debtor established cause to dismiss his Chapter 7 petition.  The Bankruptcy Court found that "the Debtor has established cause [to dismiss his bankruptcy petition], a wish to protect himself in his criminal trial by not testifying at his bankruptcy trial."  Bankruptcy Mot. Decision Tr. at 3:3-5.  The Bankruptcy Court specifically noted that it was "taking into consideration the fact

---

[9]     Knipple includes a non-exhaustive list of the ways in which Debtor allegedly manipulated the bankruptcy system in his brief.  See Appellant's Br. at pg. 11-12.

that the criminal charges were filed post-petition ... so there's been a significant change in circumstances since the filing." Id. at 4:11-14.  Implicit in the Bankruptcy Court's conclusion that Debtor established cause to dismiss his bankruptcy petition is a finding that Debtor was not acting in bad faith.

Based upon the foregoing reasons, it does not appear that the Bankruptcy Court's decision rests upon an error of law or clearly erroneous factual findings or "cannot be located within the range of permissible decisions." Geltzer, 507 F.3d at 73 (quoting Schwartz, 352 F.3d at 678).

### 2. Prejudice to Creditor

Having concluded that the Bankruptcy Court correctly determined that Debtor established cause for dismissal, the Court now turns to Knipple's arguments relating to the Bankruptcy Court's prejudice findings.  Knipple's primary argument before the Bankruptcy Court, and on appeal, is that Debtor's bankruptcy petition should not be dismissed because dismissal will be prejudicial to the interests of the objecting creditors, namely himself.  Specifically, Knipple argues that dismissal prejudicially delays his ability to collect from debtor and forces him to pursue his claim against Debtor in State Court.  At the outset, the Court recognizes, as the Bankruptcy Court below acknowledged as well, that some prejudice to Knipple would result from dismissal.

Both the statutory language and the case law make clear that an unreasonable delay that is prejudicial to creditors is a factor to consider in determining whether to grant a debtor's motion to dismiss.  11 U.S.C. §707(a)(1); Aupperle, 352 B.R. at 46; Jabarin, 395 B.R. at 338.  Prejudice to creditors results

from the automatic stay preventing creditors from collecting debts owed by the debtor, particularly when substantial time has passed between the filing of the petition and the request for dismissal.  See Geltzer, 507 F.3d at 72 ("[C]reditors can be prejudiced if the motion to dismiss is brought after the passage of a considerable amount of time and they have been forestalled from collecting the amounts owed to them.") (quoting Dinova, 212 B.R. at 441); Turpen, 244 B.R. at 435 ("Creditors can incur prejudice if the motion to dismiss is brought after the passage of a considerable amount of time and they have been forestalled from collecting the amounts owed to them.") (citing Watkins, 229 B.R. at 909); In re Hull, 339 B.R. 304, 308 (Bankr. E.D.N.Y. 2006) ("Creditors may be prejudiced where a substantial amount of time has passed, or the debtor has engaged in wrongdoing or inequitable conduct.").

On appeal, Knipple challenges the Bankruptcy Judge's conclusion that the prejudice to Knipple did not overcome Debtor's cause for dismissal.  Knipple asserts that "the element of delay is one of the most significant indicators of whether a creditor's interests have been prejudiced," Hull, 39 B.R. at 309, therefore "send[ing Knipple] back to … state court remedies [after being prevented from collecting his debts for more than two years] would constitute prejudice." Turpen, 244 B.R. at 435.  Knipple relies on In re Turpen for the proposition that relegation to state court remedies prejudices creditors where they have already been prevented from collecting their debts for more than two years. Turpen, 244 B.R. at 435.  In his view, forcing him to pursue his claim in state court would subject him to another lengthy delay.  Knipple further asserts that having to "start over" in state court is prejudicial

considering the expense he has incurred as a result of "two years of expensive litigation and extensive discovery."  Appellant's Br. at p. 5.  Additionally, Knipple argues dismissal is prejudicial because any recovery he may obtain in state court would be behind other state court judgments.

In <u>Turpen</u>, the Bankruptcy Appellate Panel for the Eighth Circuit found that "send[ing] creditors back to their state court remedies [after being prevented from collecting their debts for more than two years] would constitute prejudice" and therefore affirmed the bankruptcy court's denial of the debtors' motion to dismiss their petition.  244 B.R. at 435.  However, <u>Turpen</u> is distinguishable from the matter currently before the Court.  First, <u>Turpen</u> was decided under the stricter standard that *any* prejudice to creditors precluded dismissal of a debtor's bankruptcy petition.  <u>Turpen</u>, 244 B.R. at 435 (citing cases).  Here, the Bankruptcy Court correctly applied a "balancing of hardships analysis" and determined that the prejudice to Knipple did not overcome Debtor's showing of cause.

Additionally, delay was not the only factor leading the <u>Turpen</u> court to conclude that dismissal would prejudice creditors.  During the bankruptcy proceedings the <u>Turpen</u> debtors "sold assets that were the subject of a dispute of the [bankruptcy] Trustee, and used a large portion of the proceeds to pay prepetition creditors themselves."  <u>Turpen</u>, 244 B.R. at 435.  The court found that "[t]his action place[d] the honesty of the Debtors in serious doubt, not only because of their inability to fully account for the proceeds of the sale, but because they seem[ed] to believe that they can choose which creditors will be paid first even while in bankruptcy."  <u>Id.</u>  The debtors' actions during the bankruptcy led the court to believe

that "such practices [would] continue outside of bankruptcy to the prejudice of some or all of the creditors." <u>Id.</u>  Accordingly, the court concluded, "dismissal of a case *after it has appeared that the debtors failed to account honestly for their assets* should not be permitted *because such a failure indicates the likelihood of further questionable practices to the detriment of creditors*." <u>Id.</u> (<u>citing</u> <u>Watkins</u>, 229 B.R. at 909) (emphasis added).  Here, by contrast, Knipple has not pointed to any evidence suggesting that Lopez would similarly favor one creditor over another.

Further, that dismissal will force Knipple to pursue his claim in state court, does not constitute prejudice as a matter of law.  Courts have held that creditors are "generally not prejudiced by dismissal since they will no longer be stayed from resorting to the state courts to enforce and realize upon their claims." <u>In re Schwartz</u>, 58 B.R. 923, 925 (Bankr. S.D.N.Y. 1986).  Moreover, here the Bankruptcy Court recognized that this matter was not close to resolution in the bankruptcy court, and it would be some time before Knipple would be able to collect even if Debtor's petition were not dismissed.

In sum, the Court does not find the factual findings underlying the Bankruptcy Court's decision to be clearly erroneous or outside the range of permissible decisions.  Additionally, the Court agrees with the Bankruptcy Court's conclusion that dismissal will not prejudice Knipple by being behind other state court judgments since he would still be behind any prior state court judgments even if he prevailed in the bankruptcy court.  For these reasons, the Court does not find that the Bankruptcy Court abused its discretion in finding the prejudice to Knipple insufficient to overcome Debtor's showing of cause.

**V.  Conclusion**

For the foregoing reasons, the Court does not find that the Bankruptcy Court abused its discretion; the Bankruptcy Court's Order dismissing Debtor's petition for cause is AFFIRMED.


**Dated:**  December 2, 2010                              /s/ Freda L. Wolfson
                                                     Freda L. Wolfson, U.S.D.J